## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KRISTIAN FALKENSTEIN<br>P.O. BOX 616<br>Newtown, PA 18940 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff, | : <br> : | No. _____ |
| v. | : <br> : <br> : | |
| GRAND CANYON EDUCATION, INC.<br>2600 W. Camelback Rd.<br>Phoenix, AZ 85017 | : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendant. | : <br> : | |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.     This action has been initiated by Kristian Falkenstein (hereinafter referred to as "Plaintiff," unless indicated otherwise) against Grand Canyon Education, Inc. (hereinafter referred to as "Defendant") for violations of the Americans with Disabilities Act ("ADA" -42 USC §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et seq.*), the Pennsylvania Human Relations Act ("PHRA")[1], and Pennsylvania common law. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.     Plaintiff resides in and is a citizen of Pennsylvania.

---

[1] Plaintiff's claim under the PHRA is referenced herein for notice purposes. He is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file his lawsuit in advance of same because of the date of issuance of his federal right-to-sue letter under the ADA. Plaintiff's PHRA claims however will mirror identically his federal claims under the ADA.

3.      Upon information and belief, Defendant is incorporated under the laws of Delaware but is headquartered and has a principal place of business in Arizona, rendering it a citizen of Delaware and Arizona.

4.      This Court, in accordance with 28 U.S.C. 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of Pennsylvania, Defendant is a citizen of Delaware and Arizona, and the amount in controversy exceeds $75,000.

5.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

6.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

7.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Plaintiff was a remote employee working out of his home in New Hope, Pennsylvania and all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district. In addition, Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

8.      Plaintiff is proceeding herein under ADA and has properly exhausted his administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

**PARTIES**

9.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.     Plaintiff is an adult individual, with an address as set forth in the caption.

11.     Defendant Grand Canyon Education, Inc. is a regionally accredited provider of online postsecondary education services focused on offering undergraduate, graduate, and doctoral degree programs

12.     At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

13.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14.     Plaintiff was hired to work for Defendant on or about August 27, 2012.

15.     Plaintiff received various promotions throughout his 6.5 year tenure with Defendant and therefore held various titles during his employment, including but not limited to Admissions Representative and University Development Counselor (levels 3, 4, and 5).

16.     However, the titles held by Plaintiff during the time period relevant to the instant matter are University Development Counselor – Level 4 and University Development Counselor – Level 5.

17.     Throughout his employment with Defendant, Plaintiff as a dedicated and hard-working employee, who received several accolades for his performance with Defendant prior to suffering a work-related injury in December of 2017.

3

18.     On or December 6, 2017, Plaintiff suffered a work-related injury to his back, hip and, foot while performing work for Defendant, which was reported to Defendant's management as same.

19.     Following his aforesaid work-related injury, Plaintiff continues to suffer from disabilities related to his hip, back, and foot, which (at times) limit his ability to engage in several daily life activities, including but not limited to walking, sitting, standing, and performing manual tasks.

20.     In addition to Plaintiff's aforesaid physical health conditions, Plaintiff also has and continues to suffer from mental health conditions, which (on occasion) limits his ability to focus, engage in social interaction, sleep, and work.

21.     On or about December 8, 2017, Plaintiff commenced a medical leave of absence and took approximately six (6) weeks off from work to care for and treat for his aforesaid physical and mental health conditions (an FMLA-qualifying medical leave).

22.     Plaintiff returned from his a six-week medical leave (discussed *supra*) on or about January 16, 2018.

23.     Following his return from medical leave on January 16, 2018, Plaintiff was required to undergo physical therapy and other forms of treatment for his aforesaid physical health conditions.

24.     After filing a worker's compensation claim, taking a six-week medical leave, and apprising Defendant's management of his physical health conditions, Plaintiff was treated with severe animosity and hostility over the next approximate year and two months of his employment until he was ultimately terminated in February of 2019 (discuss further *infra*).

25.     For example, upon returning from his initial medical leave in January of 2018, Plaintiff was surprised to learn that he had a new supervisor, Jessica Stephenson (hereinafter "Stephenson").

26.     Plaintiff was extremely disappointed that he was not considered or given the opportunity to apply for the aforesaid supervisor position (now held by Stephenson), especially since he had previously expressed interest in being promoted to a supervisor position to Dan Slover (Regional Director of Operations, hereinafter "Slover").

27.     On or about February 11, 2018, still disappointed about Defendant's decision not to consider him or give him the opportunity to apply for the Stephenson's supervisor position, Plaintiff had a discussion with his co-worker (Amanda Levan – hereinafter "Levan") regarding his frustration in Defendant's decision.

28.     On or about February 12, 2018, Slover had a telephone conference with Plaintiff to discuss Plaintiff's conversation with Levan that took place the day prior (discussed *supra*).

29.     During his February 12, 2018 discussion with Mr. Slover, Plaintiff expressed his frustration and how hurt he was that he had not been considered for the aforesaid supervisor position after working so hard for the company for many years and stated that he believed if he had not gotten hurt or been out on medical leave that he would have been considered or had the opportunity to apply for the supervisor position.

30.     Plaintiff's aforesaid concerns of discrimination/retaliation (discussed with Slover on February 12, 2019) were not well received and Slover became very confrontational to the point that Plaintiff expressed to Slover that he would have to take an Ativan following their discussion as a result of his exacerbated anxiety caused from Slover's behavior.[2]

---

[2] This was the first time while employed with Defendant that Plaintiff ever made any mention of his medication.

31.     Almost immediately after his aforesaid discussion with Slover, Plaintiff was placed on administrative leave until in or about the beginning of March, 2018.

32.     When Plaintiff returned from administrative leave (discussed *supra*), he was issued an "Initial" Corrective Action Plan ("CAP") related to his aforesaid discussions with Levan and Slover in February, claiming that Plaintiff was the one being aggressive.

33.     When Plaintiff completed his March, 2018 CAP in early May of 2019, he was then promoted to a University Development Counselor – Level 5, a decision which, upon information and belief, was not made by Stephenson or Slover.

34.     Despite that Plaintiff had completed his March, 2018 CAP and had been promoted to a University Development Counselor – Level 5, the harassment, animosity, and false allegations from Stephenson and Slover did not cease and only grew worse as they embarked on a series of retaliatory and discriminatory acts against Plaintiff, including creating a pretexutal paper-trail to eventually terminated Plaintiff's employment. For example:

    a.   On or about June 14, 2018, Plaintiff was placed on another "Initial" CAP for alleged performance issues; however, prior to Plaintiff's aforesaid injuries, medical leave, and complaints of discrimination/retaliation, Plaintiff was performing his job extremely well and received an impressive score on his last annual evaluation;

    b.   Defendant's management extended Plaintiff's June 14, 2018 CAP, but after bringing concerns to Slover's attention in August of 2018 regarding Defendant's decision to pretextually extend the June 14, 2018 CAP, Defendant approved Plaintiff's completion of the CAP on September 11, 2018;

    c.  Plaintiff was then placed on a "Formal" CAP on or about November 12, 2018 (when normal policy would have been to place him on another "Initial" CAP, as he already successfully completed the June, 2018 "Initial" CAP); and

    d.  On January 14, 2018, Plaintiff was issued a "Final" CAP for alleged performance concerns.

35.    The aforesaid CAPs issued to Plaintiff during the last approximate year of his employment were completely pretextual as:

    a.  Prior to Plaintiff's aforesaid December, 2017 work-related injury and medical leave (discussed *supra*), Plaintiff had never been placed on a CAP;

    b.  Defendant's management selectively enforced performance goals against Plaintiff, as other employees (in the same or similar position as Plaintiff) were not meeting various performance goals but, upon information and belief, were not subjected to CAPs or other forms of discipline like Plaintiff;

    c.  Defendant's management would consistently show favoritism towards other employees through assigned territories and student enrollments;

    d.  Defendant's management would refuse to credit Plaintiff with student enrollments (which in turn would negatively impact some of the goals Defendant had set for him);

    e.  Defendant's management refused to give Plaintiff proper support in order to achieve goals and be successful;

    f.  Plaintiff was continuously stripped of various opportunities which would have made him more successful in meeting performance goals; and

g. Unlike other University Development Counselors, Plaintiff was forced to cover tasks for other individuals but then refused the benefits of completing such tasks – such as being credited for enrollments.

36. In addition to the aforesaid discriminatory and disparate treatment which ultimately negatively impacted Plaintiff's performance, Plaintiff was also subjected to other forms of animosity and hostility related to his workers' compensation claim, disability, need for medical leave, and/or complaints of discrimination and retaliation.

37. For example, but not intending to be an exhaustive list:

a. Plaintiff's e-mails were monitored by Stephenson through a forwarding mechanism for the last approximate year of Plaintiff's employment (which had not been the standard practice prior to his injury in December of 2017);

b. Plaintiff had policies selectively enforced against him;

c. Plaintiff was intimidated and deterred from taking time off and advised by Defendant's management that he should schedule all doctor's appointments after work (which forced Plaintiff to schedule some of his doctor's appointments during his lunch hour);

d. Plaintiff was subjected to rude and condescending treatment by Defendant's management (unlike other co-workers); and

e. Stephenson made multiple discriminatory comments regarding Plaintiff's work-related injury and workers' compensation claim, including but not limited to that she would not support Plaintiff because he was injured at work and was suing Defendant and that Plaintiff "cannot expect much in way of support as [he] was suing the company under workers' compensation."

38.     Within the last few weeks of Plaintiff's employment with Defendant, Plaintiff informed Stephenson that he would be taking some Paid Time Off ("PTO") in February of 2019 for an upcoming move, doctor's appointments (related to his health conditions), and because he was returning to a graduate program on February 21, 2019.

39.     On or about February 11, 2019, Plaintiff attended a doctor's appointment related to his aforesaid hip condition and was informed by his physician that he needed to undergo surgery on his hip as soon as possible.

40.     Therefore, on or about February 12, 2019, during a one-on-one meeting with Stephenson, Plaintiff informed Stephenson that he was cancelling the PTO time that he had scheduled for February (discussed *supra*) because he had just been informed by his doctor of his need to undergo hip surgery as soon as possible and therefore would be taking time off for same after returning from a large training event in Las Vegas, Nevada (scheduled for March 13, 2019 through March 17, 2019).

41.     On or about February 20, 2019 (less than two weeks after informing management that he was intending to take medical leave to undergo hip surgery in the very near future), Plaintiff was informed by Slover and Stephenson that he was being terminated from his employment with Defendant for no logical or legitimate reason.

42.     Plaintiff believes and therefore avers that his termination was completely pretextual, as he was terminated (1) while he was still seeking workers' compensation benefits; (2) at a time when he was confiding in Defendant's management about his aforesaid health conditions and need for surgery in the near future; (3) in close proximity to when he requested and/or would have utilized medical leave under the ADA and FMLA; and (4) after a year of being subjected to a discriminatory and retaliatory hostile work environment (discussed *supra*).

43.     Plaintiff therefore believes and avers that he was terminated in violation of the ADA, FMLA, and Pennsylvania common law.

**First Cause of Action**
**Violations of the Americans with Disabilities Act, as amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Failure to Accommodate; [4] Hostile Work Environment)**

44.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

45.     Plaintiff suffered from qualifying health conditions under the ADA (as amended) for which he requested reasonable accommodations including but not limited to block and intermittent medical leave.

46.     Plaintiff was subjected to a hostile work environment during his period of employment such that he was refused accommodations, issued pretextual discipline, subjected to derogatory comments, treated in a demeaning manner, and stripped of opportunities.

47.     Plaintiff expressed concerns to Defendant's management about some of the discriminatory and/or retaliatory treatment that he was being subjected to; however, his concerns went unresolved and instead he was subjected to further discrimination and retaliation.

48.     Plaintiff believes and therefore avers that he was subjected to a hostile work environment because of: (1) his known and/or perceived health problems; (2) his record of impairment; (3) his requested accommodations; and/or (4) his complaints of discrimination and/or retaliation.

49.     On or about February 20, 2019, Plaintiff was terminated from his employment with Defendant because of: (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations; (4) Defendant's failure to accommodate him; and/or (5) his expressed concerns of disability discrimination and/or retaliation.

50.     These actions as aforesaid constitute violations of the ADA, as amended.

**Second Cause of Action**
**Common-Law Wrongful Discharge**
**(Public Policy Violation)**

51.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52.     Upon information and belief, Plaintiff was terminated in substantial part for making a claim for workers' compensation benefits and/or seeking workers' compensation benefits and/or for his work-related injuries (as discussed *supra*).

53.     It is against Pennsylvania's public policy for an employee to be terminated for making a workers' compensation claim and/or seeking workers' compensation benefits. These actions as aforesaid constitute wrongful termination in Pennsylvania.  *See Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231 (1997); *Rothrock v. Rothrock Motor Sales, Inc.,* 584 Pa. 297, 883 A.2d 511, 516 (2005).

54.     The animosity and hostility that Plaintiff was subject to on a constant basis between his claim for workers' compensation and his termination creates an inference that his termination was in retaliation for making such a claim.

55.     These actions as aforesaid constitute wrongful termination in Pennsylvania.

**Third Cause of Action**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Retaliation & Interference)**

56.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

57.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

58.     Plaintiff requested leave from Defendant, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

59.     Plaintiff had at least 1,250 hours of service with Defendant during his last full year of employment.

60.     Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

61.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

62.     Defendant committed interference and retaliation violations of the FMLA by *inter alia*: (1) taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA, including but not limited to denying his ability to take intermittent leave to attend doctor's appointments, issuing him numerous pretextual and selectively enforced CAPs over a one-year period, and stripping him of various opportunities; (2) considering Plaintiff's 2017/2018 FMLA leave in making the decision to issue him numerous CAPs in 2018; (3) considering Plaintiff's 2017/2018 FMLA leave in making the decision to strip him of various opportunities which would have helped him become more successful within Defendant; (4) considering Plaintiff's FMLA needs in making the decision to terminate him; (5) issuing him numerous CAPs in 2018 in retaliation for requesting and/or utilizing FMLA leave; (6) stripping him of various opportunities which would have helped him become more successful within Defendant in retaliation for requesting and/or utilizing FMLA leave; and (7) terminating Plaintiff's employment in retaliation for requesting and/or utilizing FMLA leave.

63.     These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and is to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.    Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, paid tuition (for Plaintiff's Graduate degree program), pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

C.    Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.    Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
    Ari R. Karpf, Esq.
    3331 Street Road
    Two Greenwood Square, Suite 128
    Bensalem, PA 19020
    (215) 639-0801

Dated: November 25, 2019

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Kristian Falkenstein

v.

Grand Canyon Education, Inc.

CIVIL ACTION

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                                ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
   and Human Services denying plaintiff Social Security Benefits.                                       ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.         ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
   exposure to asbestos.                                                                                ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
   commonly referred to as complex and that need special or intense management by
   the court. (See reverse side of this form for a detailed explanation of special
   management cases.)                                                                                   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.                     (X)

| 11/26/2019 | | Plaintiff |
| --- | --- | --- |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff:  PO Box 616, Newtown, PA 18940

Address of Defendant:  2600 W. Camelback Road, Phoenix, AZ 85017

Place of Accident, Incident or Transaction:  Defendant's place of business

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 11/26/2019  _____  ARK2484 / 91538
  *Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

*A.*  *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☒ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
    *(Please specify):* _____

*B.*  *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Ari R. Karpf _____ , counsel of record *or pro se plaintiff*, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 11/26/2019  _____  ARK2484 / 91538
  *Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

FALKENSTEIN, KRISTIAN

**DEFENDANTS**

GRAND CANYON EDUCATION, INC.

**(b)** County of Residence of First Listed Plaintiff _____Bucks_____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____Maricopa_____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| | | | Leave Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |
| | | | | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601)

Brief description of cause:
Violations of the ADA, FMLA, PHRA and PA Common Law.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
11/26/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

| Print | Save As... | | Reset |
|---|---|---|---|